IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| UNITED STATES OF AMERICA, | ) | Case No. 3:22-cr-40 |
| --- | --- | --- |
| | ) | |
| v. | ) | SENTENCING MEMORANDUM |
| | ) | AND REQUEST FOR A |
| JACOB JOHN PREUSCHL, | ) | DOWNWARD VARIANCE |
| | ) | |
| Defendant. | ) | |

The government, by and through the undersigned Assistant United States Attorney, files this sentencing memorandum in anticipation of the sentencing hearing set for January 25, 2023, at 1:30 p.m.

## TABLE OF CONTENTS

I.    **BACKGROUND** ........................................................................................1

II.   **SENTENCING CALCULATION** .........................................................2

III.  **GOVERNMENT'S RECOMMENDATION** ...........................................3

     A.    Defendant is "non-indigent" for purposes of the 18 U.S.C. § 3014 special assessment ........................................................................8

### I. BACKGROUND

An Indictment was filed on April 3, 2022, in the Southern District of Iowa, charging Jacob John Preuschl (Defendant) with Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) and 2251(e); Receiving Child Pornography, in violation of 18 U.S.C. § 2252(a)(2) and 2252(b)(1), Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and 2252(b)(2); and Transfer of Obscene Material to Minors, in violation of 18 U.S.C. § 1470. (PSR ¶ 1.) Notices of Forfeiture were also filed under 18 U.S.C. §§ 2253 and 1467. (*Id.* ¶ 2.)

1

On August 5, 2022, Defendant pleaded guilty to Counts One and Four of the Indictment, and, on September 28, 2022, the Court accepted Defendant's plea and adjudicated him guilty. (*Id.* ¶ 3.) The government agreed to dismiss Counts Two and Three at the time of sentencing. (*Id.* ¶ 4.)

## II. SENTENCING CALCULATION

In the presentence report, paragraphs 54-79 and 137, Defendant's guideline range was calculated as follows:

**Group One (Count 1):**

| | |
|---|---|
| Base Offense Level USSG § 2G2.1(a) | 32 |
| Not Yet 16 USSG § 2G2.1(b)(1)(B) | +2 |
| Sexual Act USSG § 2G2.1(b)(2)(A) | +2 |
| Sadistic/Masochistic Conduct USSG § 2G2.1(b)(4) | +4 |
| Use of a Computer USSG § 2G2.1(b)(6) | +2 |
| Adjusted Offense Level | 42 |

**Group Two (Count 4):**

| | |
|---|---|
| Base Offense Level USSG § 2G3.1(a) | 10 |
| Distribution Intended to Persuade USSG § 2G3.1(b)(1)(D) | +6 |
| Use of a Computer USSG § 2G3.1(b)(3) | +2 |
| Adjusted Offense Level | 18 |

| Group | Adjusted Offense Level | Units |
|---|---|---|
| Group 1 | 42 | 1.0 |
| Group 2 | 18 | 0.0 |

**Final Guideline Range**

| | | |
|---|---|---|
| Greater of the Adjusted Offense Levels Above | | 42 |
| Number of Units USSG § 3D1.4 | | +0 |
| Repeat and Dangerous Sex Offender USSG § 4B1.5(b)(1) | | +5 |
| Acceptance of Responsibility USSG § 3E1.1(a), (b) | | -3 |
| Total Offense Level | | **43**[1] |
| Criminal History Category | | I |
| Guideline Sentencing Range: | | 480 months[2] |

## III. GOVERNMENT'S RECOMMENDATION

The sentencing statutes inform this Court that it must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of Defendant; and to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). The Court, in determining the particular sentence to be imposed, shall also consider the nature and circumstances of the offense and the history and characteristics of Defendant. 18 U.S.C. § 3553(a)(1). The sentence must "avoid

---

[1] *See* USSG Ch. 5, Pt. A, n.2.
[2] *See* USSG § 5G1.2(b), (d).

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

When fashioning the appropriate sentence in this case, the Court should consider the nature and circumstances of the offense, which are incredibly serious. In approximately April 2021, as a 27-year-old, Defendant began communicating with Minor Victim 1 (MV1), a 13-year-old female, on Snapchat. (PSR ¶ 13.) Defendant initiated contact with MV1 by asking her about anime and then quickly gauging her receptiveness to his sexual interest by commenting about a "hot date." (*Id.* ¶ 20.) MV1 told Defendant her age, which Defendant did not have a problem with. (*Id.*) Defendant misrepresented his age, telling MV1 he was 22 years old. (*Id.* ¶ 13.)

He immediately began sending MV1 pictures of his penis and requesting that she send nude images of herself. (*Id.* ¶ 21.) Defendant pressured her to send the nude images by threatening to tell her mom and she was scared. (*Id.*) To illustrate her age and naivete, when she saw Defendant's now-wife in the background of one of his photographs and Defendant stated that it was his "friend with benefits," MV1 did not know what that term meant and had to look it up. (*Id.*) She reported being surprised by what she found. (*Id.*)

MV1 sent nude images of herself to Defendant, including her breasts and genitals and reported that Defendant asked for specific poses or images. (*Id.* ¶ 22.) Specifically, she recalled one time in which he asked her to send an image of her sitting on the ground with her legs bent in a particular manner. (*Id.*) In fact, Detective Lord located an image MV1 sent on May 8, 2021, in which her breasts were

exposed as she knelt on the floor with a belt wrapped around her neck. (*Id.* ¶ 36.) One of Defendant's apparent responses to that video was: "Oh I just scared the shit out of myself oh my God. Um, well I'm a little more awake uh but yeah but like I said, I found this picture and I can't stop thinking about you doing this pose. Naked with that leash on. Especially that angle oh my God." (*Id.*)

This case was made more serious by the presence of voice notes in the Snapchat communications. (*Id.* ¶ 27.) Defendant and MV1 did not merely communicate by sending written messages to one another, they also sent short voice messages to one another and engaged in "cybersex" through these voice notes. (*See id.* ¶ 29.) Further, Defendant referred to himself as "pedo" and discussed the sex acts he wished to perform on MV1. (*Id.* ¶ 28.) The most egregious voice note, however, was Defendant's articulation of his rape fantasy: ""Well thing is, if people think I'm raping you and they call the cops then I might as well start raping you and it takes the cops the a while [sic] to get here and once they do they can't unrape you." (*Id.* ¶ 35.)

To maintain his "relationship" with MV1 and continue the grooming process, Defendant made plans with MV1 to meet her in person—once she turned 16. (*Id.* ¶ 37.) She not only reported this in her interview, but she put the meeting on her calendar in her phone: June 10, 2023. (*Id.*)

MV1 estimated that their contact ended in late July. (*Id.* ¶ 22.) Unbeknownst to Defendant, on August 9, 2021, MV1's mother had learned of Defendant and their communications and she called NCMEC to make a tipline report. (*Id.* ¶ 13.) Once Detective Lord was able to obtain a full extraction of Defendant's cell phone, in May

5

2022, evidence was revealed that Defendant had persisted attempting to reach MV1 for nearly two more months. (*Id.* ¶ 40, 42-43.)

He tried to contact her via Snapchat in September 2021, sending her seven media messages (though the content of the messages is unknown), text messages, and attempted voice calls. (*Id.* ¶¶ 42-43.) And he tried to video call her on September 14, 2021. This is evidence they had communicated outside of Snapchat and Instagram and may have also engaged in live video chats, as well.

We learned through evidence on Defendant's cell phone that MV1 was not the only minor with whom Defendant was communicating. (*Id.* ¶ 44.) There was evidence in his Snapchat account that he was communicating with several other minor females, though no transmitted media was associated with those specific messages. (*Id.*)

Finally, Defendant also used the Telegram application to obtain images and videos depicting child pornography, age difficult material, and anime child pornography. (*Id.* ¶¶ 45-47.)

Therefore, the nature and circumstances of this offense are incredibly serious.

The Court should also consider Defendant's history and characteristics, which do not provide a framework for understanding Defendant's conduct. Although it appears Defendant suffered neglect and his family struggled financially, he did not report suffering any sexual abuse. (*Id.* ¶ 89.) Aside from his father, Defendant reported a close-knit family structure. (*Id.* ¶ 94, 98-100.)

Defendant was a good student where he achieved success, graduating from high school and college and obtaining a job in his field. (*Id.* ¶¶ 115-17, 123-125.) Growing up, Defendant participated in extracurricular activities, like reading programs, sports, and weightlifting. (*Id.* ¶ 92.)

Although Defendant reported finding his father's pornography at a young age, that does not explain Defendant's conduct. (*Id.* ¶ 91.) That may help explain Defendant becoming sexualized at a young age and would likely contribute to other issues, but, assuming it was adult pornography, would not cause him to become sexually attracted to children.

Defendant does, however, have a significant issue with alcohol. (*Id.* ¶¶ 111-112.) His criminal history revolves around his problematic alcohol consumption with an OWI conviction in 2017 and an Interference with Official Acts conviction in 2018, which occurred while he was highly intoxicated. (*Id.* ¶¶ 82-83.) In fact, Defendant was so intoxicated during the 2018 incident that his family called the police. (*Id.* ¶ 83.) When the police arrived, they observed his family members restraining him. (*Id.*) Defendant was out of control, yelling, and exhibiting assaultive behaviors. (*Id.*)

It appears that his problematic alcohol consumption continued after that, as both his mother and wife reported this issue to probation. (*Id.* ¶ 111.) Defendant appeared to agree, indicating a desire for treatment. (*Id.* ¶ 112.)

In his bond report, Defendant reported having been in mental health treatment for approximately one year prompted by the execution of the search warrant at his residence. (DCD 16, p. 3.) He indicated the frequency of his treatment

was once per month, he did not receive a diagnosis, and he did not need further treatment. (*Id.*) Now, in the PSR, he appears to indicate an acknowledgement that he needs "professional help." (*Id.* ¶ 109.)

The fact is that Defendant is sexually attracted to children and that is not and was not caused by alcohol use. Unless and until Defendant obtains sex offender treatment, he remains a significant danger to the community.

### A. Defendant is "non-indigent" for purposes of the 18 U.S.C. § 3014 special assessment.

"[I]n addition to the assessment imposed under section 3013, the court shall assess an amount of $5,000 on any non-indigent person . . . convicted of an offense" relating to child pornography. 18 U.S.C. § 3014(a)(3). The application of this special assessment is mandatory. *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017). Thus, if the district court finds a defendant is non-indigent, it must apply the special assessment. *Id.*

The Eighth Circuit held that a finding of non-indigency for purposes of this special assessment is different than for a court appointed attorney, for instance. *Id.* at 800-01. Instead, "an analysis of both a defendant's current financial situation and his ability to pay in the future is appropriate in determine his 'non-indigent' status." *Id.* at 801.

The Court later added additional facts the district court should consider: a defendant's assets and liabilities listed in the PSR, length of sentence, and age upon release. *United States v. Barthman*, 983 F.3d 318, 32-23 (8th Cir. 2020). The Court stated that a defendant with significant liabilities going into a lengthy sentence is

likely to be indigent. *Id.* at 323. Whereas the defendant in *Kelley*, who had a college education and a "slightly negative net worth," was determined to be non-indigent because he had "the education and skills to be employed and earn money" to pay the assessment." 861 F.3d at 802, 796.

Here, Defendant is 27 years old with a master's degree and a history of employment in his field of study. The PSR reflects that Defendant has a net worth of nearly $25,000. (PSR ¶ 129.) He also has two life insurance policies worth more than $160,000. (*Id.* ¶ 130.) The Court will not be ordering restitution as part of his sentence, as none has been requested. (*Id.* ¶ 49.) As such, the PSR concluded that Defendant "may be able to pay a monetary obligation." (*Id.* ¶ 135.) Furthermore, defense counsel is retained, as opposed to being court appointed. Although Defendant is facing a significant prison term, considering his young age and earning ability upon his release (likely at or before 50 years old)[3], the Court should find that he is non-indigent and impose the $5,000 special assessment under 18 U.S.C. § 3014.

After considering all the sentencing factors, particularly the need to avoid unwarranted sentencing disparities, despite the foregoing, the government believes that 480 months in prison would be greater than necessary. Therefore, the government respectfully requests that the Court grant a downward variance and

---

[3] For example, a sentence of 300 months' imprisonment would amount to 255 months of incarceration (assuming maximum good time), which would put Defendant at approximately 48 years old upon release.

9

impose a sentence in the range of 292-365 months imprisonment, which is sufficient but not greater than necessary.

                Respectfully submitted,

                Richard D. Westphal
                United States Attorney

By: */s/ Torrie J. Schneider*
     Torrie J. Schneider
     Assistant United States Attorney
     U.S. Courthouse
     131 E. Fourth Street, Suite 310
     Davenport, Iowa 52801
     Tel: (563) 449-5432
     Email: torrie.schneider@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2023,
I electronically filed the foregoing with
the Clerk of Court using the CM ECF system.

UNITED STATES ATTORNEY

By: /s/ *Torrie J. Schneider*
     Torrie J. Schneider